UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NML CAPITAL, LTD.,

                        Plaintiff,                          09 Civ. 7013 (TPG)

        - against -

ENERGÍA ARGENTINA S.A. and
THE REPUBLIC OF ARGENTINA,

                        Defendants.
------------------------------------------------------------x


**MEMORANDUM OF LAW OF DEFENDANT ENERGÍA
ARGENTINA S.A. IN SUPPORT OF ITS MOTION TO DISMISS**


AKERMAN SENTERFITT LLP
Carlos Mendez-Peñate
Martin Domb
335 Madison Avenue, 26th Floor
New York, New York 10017
Tel. (212) 880-3800
Fax (212) 880-8965

*Attorneys for Defendant Energía Argentina S.A.*

Dated: August 6, 2010

{NY109613;1}

## Table of Contents

Page

Table of Authorities .................................................................................................. ii

Preliminary Statement ...............................................................................................1

ARGUMENT

I.  THE COURT LACKS SUBJECT-MATTER AND PERSONAL JURISDICTION
    OVER THE CLAIMS AGAINST ENARSA, AS ENARSA IS ENTITLED TO
    AND HAS NOT WAIVED SOVEREIGN IMMUNITY ...................................4

    A.  NML Has Not Alleged an Independent
        Basis for Jurisdiction Over ENARSA ....................................................5

    B.  The Republic Waived Only Its Own Immunity, and Only with
        Respect to the Bonds; Its Waiver thus Cannot Be Imputed to ENARSA ...............7

    C.  ENARSA Has Not Engaged in FSIA Commercial Activity ...................................9

II. THE COMPLAINT FAILS TO STATE A CLAIM THAT
    ENARSA IS THE ALTER EGO OF THE REPUBLIC ...................................11

    A.  Pleading Requirements Under *Iqbal* and *Twombly* ...............................................11

    B.  The Elements of an Alter Ego Claim under *Bancec* ...........................................12

    C.  The Complaint's Conclusory Allegations Must Be Disregarded...........................15

    D.  The Complaint's Remaining Allegations
        Fail to Allege a *Plausible* Alter Ego Claim ..........................................15

        1.  Ownership and Overall Management ......................................................15

        2.  Financial Support ...................................................................................16

        3.  Rate-Setting and Other Public Policy Direction .......................................17

        4.  The Complaint's Allegations of "Fraud and
            Injustice" under *Bancec* Are Purely Conclusory .......................................20

Conclusion .................................................................................................................21

**Table of Authorities**

**Page**

<u>Cases</u>

Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.,
    183 F.3d 1277 (11th Cir. 1999) ...................................................14

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989) .................................4

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).........................................................11, 12, 20

Bayer & Willis Inc. v. Republic of Gambia, 283 F. Supp. 2d 1 (D.D.C. 2003) ............................14

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).......................................11, 12, 20

Butler v. Sukhoi Co., 579 F.3d 1307 (11th Cir. 2009) .................................................6

EM Ltd. v. Republic of Argentina, 473 F.3d 463 (2nd Cir. 2007) ...............................13

EM Ltd. v. Republic of Argentina, No. 08 Civ. 7974 (TPG),
    2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009).................................................19

Epperson v. Entertainment Express, Inc., 242 F.3d 100 (2d Cir. 2001) ......................5, 8

Filler v. Hanvit Bank, 378 F.3d 213 (2d Cir. 2004)................................................19

First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba,
    462 U.S. 611 (1983) ("*Bancec*")..................................................... 3, *passim*

Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438 (D.C. Cir. 1990) ...............4

Gates v. Victor Fine Foods, 54 F.3d 1457 (9th Cir. 1995) .............................................9

Hercaire Int'l, Inc. v. Argentina, 821 F.2d 559 (11th Cir. 1987)..................................14

Hester Int'l Corp. v. Federal Republic of Nigeria, 879 F.2d 170 (5th Cir. 1989) ..................16, 18

Kensington Int'l Ltd. v. Republic of Congo, No. 03 Civ. 4578 (LAP),
    2007 U.S. Dist. Lexis 25282 (S.D.N.Y. March 30, 2007).....................................6, 20

Knox v. Orascom Telecom Holding S.A.E., 477 F. Supp. 2d 642 (S.D.N.Y. 2007)......................5

Letelier v. Republic of Chile, 748 F.2d 790 (2d Cir. 1984),
    *cert. denied*, 471 U.S. 1125 (1985).......................................4, 13, 14, 17, 20

Library of Congress v. Shaw, 478 U.S. 310 (1986).................................................. 8-9

**Page**

LNC Invs. Inc. v. Republic of Nicaragua, 115 F. Supp. 2d 358 (S.D.N.Y.),
    *aff'd*, 228 F.3d 423 (2d Cir. 2000) ................................................................13

Peacock v. Thomas, 516 U.S. 349 (1996) ....................................................................5

Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.,
    476 F.3d 140 (2d Cir. 2007) ..................................................................................19

Pravin Bankers Assocs., Ltd. v. Banco Popular del Peru,
    9 F. Supp. 2d 300 (S.D.N.Y. 1998) ......................................................................14

Saudi Arabia v. Nelson, 507 U.S. 349 (1993) ........................................................4, 10

Schneidemann v. Qatar Football Ass'n, No. 04- Civ. 3432 (LAP),
    2004 WL 144846 (S.D.N.Y. 2008) .......................................................................13

Seijas v. Republic of Argentina, No. 04 Civ. 400 (TPG) (S.D.N.Y. Aug. 19, 2009)
    [Domb Decl. Ex. E] ..........................................................................................16, 18

Transamerica Leasing, Inc. v. La Republica de Venezuela,
    200 F.3d 843 (D.C. Cir. 2000) ...........................................................................15, 17

Transatlantic Shiffahrtskontor GMBH v. Shanghai Foreign Trade Corp.,
    204 F.3d 384 (2d Cir. 2000) .................................................................................9, 10

U.S. Fidelity & Guar. Co. v. Braspetro Oil Services Co., No. 97 Civ. 6124 (JGK),
    1999 U.S. Dist. Lexis 7236 (S.D.N.Y. May 17, 1999), *aff'd per curiam*,
    199 F.3d 94 (2d Cir. 1999) ..................................................................................7, 20

Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines,
    965 F.2d 1375 (5th Cir. 1992) ...............................................................................13

World Wide Minerals, Ltd. v. Republic of Kazakhstan,
    296 F.3d 1154 (D.C. Cir. 2002) ..............................................................................8

*(Cont'd)*

**Page**

**Statutes, Rules and Other Authorities**

28 U.S.C. § 1330(a), (b) ...........................................................................................2

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "FSIA") ..................................2

    § 1603(a) ...........................................................................................4
    § 1603(b) ...........................................................................................4
    § 1604 ...............................................................................................4
    § 1605(a)(1) .......................................................................................5
    § 1605(a)(2) ...............................................................................5, 9-10
    § 1610(b) ..........................................................................................13

H. R. Rep. No. 94-1487, *reprinted in* U.S. Code Cong. & Admin. News 1976 ..........................13

Paul L. Lee, "Central Banks and Sovereign Immunity,"
    41 Colum. J. Transnat'l L. 327 (2003) ..................................................................13

Pub. L. 111-5, 123 Stat. 209 (Feb. 17, 2009) ...........................................................18

Rail Passenger Service Act, 49 U.S.C. § 24101 *et seq.*:

    § 24302(a)(1) ....................................................................................16

Defendant Energía Argentina S.A. ("ENARSA") submits this memorandum in support of its motion to dismiss the claims alleged against it on the grounds that (a) the Court lacks subject-matter and personal jurisdiction over such claims, as ENARSA is entitled to and has not waived sovereign immunity, and (b) the complaint fails to state a claim that ENARSA is the alter ego of defendant The Republic of Argentina (the "Republic").  ENARSA also joins in the arguments made by the Republic in support of its motion to dismiss, dated October 9, 2009, as to NML's failure to state an alter ego claim against ENARSA.

## Preliminary Statement[1]

ENARSA was created in 2004, pursuant to statute, as an independent entity whose majority of shares are owned by the Republic.  It is an energy company, whose purpose is to engage in essentially every aspect of the energy sector, including exploration, transportation, purchase, sale, distribution, import, export, and industrialization, with respect to hydrocarbons, natural gas, and other sources of energy.  (Domb Decl. Ex. A [law establishing ENARSA], Articles 1, 5; and Domb Decl. Ex. B [decree approving ENARSA's articles of incorporation and by-laws], Chapter I, Article Three and Chapter II.)

Among ENARSA's many activities is the importation of liquid natural gas ("LNG") for domestic distribution.  That particular function came to the Court's attention at the outset of this action, when NML sought an order seizing ENARSA's rights to a shipment of LNG being transported by ship from Egypt to Argentina.  The Court denied that application for several

---

[1]  As the Court is generally familiar with the factual background and context of this litigation, we provide in this preliminary statement a brief summary of the facts relevant to this motion.  These facts are drawn from (a) the allegations in the complaint ("Comp.") (a copy of which is attached as Ex. G to the accompanying Domb Declaration), (b) evidentiary materials previously filed in this action, *e.g.*, in connection with the Republic's pending motion to dismiss, and (c) unreported decisions and other items in the public record, submitted with the accompanying Declaration of Martin Domb ("Domb Decl.").

reasons, including the fact that "the natural gas [was] intended to be used to provide gas for citizens of Argentina" (Domb Decl. Ex. C, p. 53, lines 23-24).

ENARSA sells natural gas domestically at low prices, in order to ensure that Argentine citizens can afford to heat their homes.  The Republic subsidizes ENARSA for the losses it incurs in doing so.  ENARSA complies with other national policy directives by engaging in various energy-related projects, such as building a pipeline to transport natural gas from Bolivia into Argentina, engaging in a joint oil exploration project with Venezuela, and promoting the use of energy from plants using renewable sources.  (Comp. ¶¶ 36-40.)

ENARSA was created in 2004, long after the Republic issued and defaulted on the bonds under which NML holds judgments or claims.  Since the Republic's default, the Republic has succeeded in refinancing about 92 percent of the face value of the bonds, through exchange offers to all bondholders completed in 2005 and 2010 (Domb Decl. Ex. D).  The complaint does not allege that ENARSA has had any involvement concerning the bonds, at any time.

Nevertheless, in this action NML seeks to hold ENARSA liable, not only on the bonds held by NML, but for any and all liabilities of the Republic.  Its theory is that ENARSA is the Republic's alter ego, and therefore should be treated in all respects as if it were the Republic.

NML's theory is faulty in at least two significant respects.  First, the Court lacks subject-matter and personal jurisdiction over ENARSA, under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "FSIA"), because ENARSA is a foreign government instrumentality that is entitled to and has not waived its immunity under the FSIA.  *See* 28 U.S.C. § 1330(a) (subject matter jurisdiction exists where the foreign state or instrumentality is not entitled to immunity under the FSIA); 28 U.S.C. § 1330(b) (personal jurisdiction exists where there is subject matter jurisdiction and service has been made in accordance with the FSIA).  NML does

not allege that jurisdiction exists over ENARSA itself.  Instead, in a circular argument, NML relies on ENARSA's alleged alter ego status – which is the ultimate relief that NML seeks in this case – to claim that ENARSA is subject to the Court's jurisdiction on the same basis that the Court had jurisdiction over the claims against the Republic arising from bonds.  NML thus fails to allege an <u>independent</u> basis for jurisdiction over ENARSA, as the law requires (Point I below).

Second, the complaint falls far short of alleging sufficient non-conclusory facts evidencing an alter ego relationship between the Republic and ENARSA.  In its 1983 decision in <u>First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba</u>, 462 U.S. 611 (1983) ("*Bancec*"), the Supreme Court set forth the rare circumstances under which an instrumentality's separate status may be disregarded (Point II.B).  NML attempts, in its complaint, to allege that such circumstances exist with respect to ENARSA.  However, much of the complaint consists of bare conclusory allegations which, under the pleading standards in the Supreme Court's recent decisions in <u>Iqbal</u> and <u>Twombly</u>, must be disregarded (Point II.A).  The remaining allegations describe facts concerning the relationship between the Republic and ENARSA that are innocuous and typical of relationships between sovereign states and their instrumentalities generally – *e.g.*, that the state owns most or all of the instrumentality's shares, appoints most or all of its directors, provides it with subsidies or other financial support, and requires it to act in accordance with national policy (Point II.D).

NML's claim that a "fraud or injustice" would result unless the Court disregarded ENARSA's separate status – a status it is presumed to have – is based on two threadbare paragraphs, which consist of purely conclusory allegations (Comp. ¶¶ 49-50).  Glaringly missing from the complaint are any allegations that the Republic has used ENARSA for any purpose

other than to carry out a national energy policy whose main goals are to provide energy to its citizens at low cost and promote the discovery and exploitation of energy sources (Point II.D.4). The Second Circuit's conclusion in reversing a decision that Chile's airline was the alter ego of the Chilean government is equally apt in this case; NML's allegations "do not add up to anything that resembles the abuses in the decisions cited in *Bancec*." Letelier v. Republic of Chile, 748 F.2d 790, 794 (2d Cir. 1984), *cert. denied*, 471 U.S. 1125 (1985).

For each of these reasons – lack of FSIA jurisdiction and failure to plead a plausible alter ego claim, the claims against ENARSA should be dismissed.

## ARGUMENT

## I.    THE COURT LACKS SUBJECT-MATTER AND PERSONAL JURISDICTION OVER THE CLAIMS AGAINST ENARSA, AS ENARSA IS ENTITLED TO AND HAS NOT WAIVED SOVEREIGN IMMUNITY

NML correctly alleges that ENARSA is an "agency or instrumentality" of the Republic under the FSIA, § 1603(b) (Comp. ¶ 9).  ENARSA therefore is a "foreign state" as defined in § 1603(a), and as such, "is presumptively immune from the jurisdiction of United States courts" unless an exception specified in the FSIA applies.  Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); 28 U.S.C. § 1604; *see also* Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989) (the FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts").

In addition, foreign sovereign instrumentalities are presumed to have an independent judicial status, which applies to jurisdictional as well as substantive issues.  Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 446 (D.C. Cir. 1990).  Thus, to properly invoke the Court's jurisdiction, NML would have to allege sufficient facts to overcome

both the presumption of immunity and the presumption of separate status that the FSIA grants to
ENARSA.

NML alleges that two statutory exceptions to immunity apply:  waiver (Comp. ¶ 10
[citing § 1605(a)(1)]), and commercial activity (Comp. ¶ 11 [citing § 1605(a)(2)]).  However, the
complaint fails to allege facts establishing that either exception applies.  Accordingly, NML
lacks both subject-matter jurisdiction <u>and</u> personal jurisdiction over ENARSA.

### A.   NML Has Not Alleged an Independent Basis for Jurisdiction Over ENARSA

NML does not allege that ENARSA <u>itself</u> waived immunity under the FSIA.  NML's
jurisdictional allegations instead depend on its claim that the <u>Republic</u>'s waiver and commercial
activity should be imputed to ENARSA, on the theory that ENARSA is the Republic's alter ego
(Comp. ¶¶ 10, 11).  This is a circular, bootstrap argument; it assumes for jurisdictional purposes
the <u>ultimate</u> relief that NML seeks in this action, namely, a declaration that ENARSA is the
Republic's alter ego, that its separate status should be ignored for all purposes, and that it is
liable for the Republic's debts generally (<i>see</i> Comp. p. 21 ["Wherefore" clauses]).

Courts have made clear that a plaintiff alleging alter ego or veil-piercing claims in order
to enforce a judgment against a person not already liable on the judgment may not rely on the
court's jurisdiction over the original judgment debtor, but must assert an independent basis for
jurisdiction over the new defendant.  <u>Epperson v. Entertainment Express, Inc.</u>, 242 F.3d 100, 105
(2d Cir. 2001) (veil-piercing claims against "a person not already liable" for a judgment "require
an independent jurisdictional basis"), <i>citing</i> <u>Peacock v. Thomas</u>, 516 U.S. 349 (1996) (same); <i>see
also</i> <u>Knox v. Orascom Telecom Holding S.A.E.</u>, 477 F. Supp. 2d 642 (S.D.N.Y. 2007) (same).
The principle applies whether the claim against the person not already liable is alleged in a
separate action or in the same action.  <u>Epperson</u>, 242 F.3d at 106 n.6.

The principle equally applies when the person not already liable is a foreign state or instrumentality, *i.e.*, when jurisdiction over that defendant can only be based on the FSIA.  For example, in Butler v. Sukhoi Co., 579 F.3d 1307 (11th Cir. 2009), plaintiffs had obtained a $3.6 million judgment against "SDB," a Russian government instrumentality.  As the judgment remained unpaid, plaintiffs commenced a second action against several other Russian government instrumentalities, alleging that these additional defendants were liable as alter egos of SDB.  The Eleventh Circuit held that the alter ego allegations did not allege an independent basis for FSIA jurisdiction over the additional Russian entities, even though defendants "conceded for purposes of their motion to dismiss that they were alter-egos of SDB."  *Id.* at 1314.

In its opposition to the Republic's motion to dismiss the alter ego complaint, NML cites two cases in support of its claim that Argentina's waiver of immunity extends to ENARSA.  The factual allegations in those cases were extreme and radically different from those alleged in this case; those decisions do not support jurisdiction in this case.  In Kensington Int'l Ltd. v. Republic of Congo, No. 03 Civ. 4578 (LAP), 2007 U.S. Dist. Lexis 25282 (S.D.N.Y. March 30, 2007), plaintiff had a judgment against Congo, which it sought to recover from Congo's government-owned petroleum company.  Plaintiff claimed, as NML does here, that Congo's waiver of immunity should be imputed to its petroleum company.  Judge Preska upheld jurisdiction on that basis because there was extensive evidence of abuse, including commingling of assets (*id.* at *30, 34), which had already led courts in three other countries – England, France, and the Cayman Islands – to hold that the petroleum company was Congo's alter ego.  *Id.* at *9-12, 25-28.

The other case, U.S. Fidelity & Guar. Co. v. Braspetro Oil Services Co., No. 97 Civ.
6124 (JGK), 1999 U.S. Dist. Lexis 7236 (S.D.N.Y. May 17, 1999), *aff'd per curiam*, 199 F.3d 94
(2d Cir. 1999), is also easily distinguishable on at least two grounds.  First, the alter ego evidence
adduced by plaintiff was extensive and compelling; it included, for example, evidence that the
New York bank accounts of the alleged alter ego (Brasoil) were used by another Brazilian
government instrumentality (Braspetro) "for its worldwide transactions." *Id.* at *31-32.  Second,
and even more significantly, the alter ego itself was the party to the contracts – two construction
performance bonds – on which plaintiffs, the sureties, were suing.  The alter ego itself was
accused of breaching those contracts, through its own conduct as well as that of its affiliated
Brazilian entities.

In this case, by contrast, NML does not allege that the Republic has used ENARSA's
funds or bank accounts,[2] does not allege that ENARSA has any liability under the Republic's
bonds that underlie this lawsuit, and does not allege that any court has found ENARSA to be the
Republic's alter ego.  NML has failed to allege an independent basis for jurisdiction over
ENARSA.

**B.      The Republic Waived Only Its Own Immunity, and Only with Respect
        to the Bonds; Its Waiver thus Cannot Be Imputed to ENARSA**

In asserting FSIA jurisdiction based on waiver, NML relies on the written waiver of
immunity contained in the 1994 Fiscal Agency Agreement concerning the Republic's bonds (a
copy of that agreement has previously been filed in this action, Docket # 21 [Decl. of Haynee C.
Kang], Ex. 2).  The parties to that agreement were the Republic and Bankers Trust Company, as

---

[2]   On the contrary, NML alleges that Argentina has subsidized ENARSA, which negates rather
than proves an alter ego relationship (*see* Point II.D.2 below).

Fiscal Agent.  ENARSA was not a party to the agreement, and was not established until 2004,

ten years after the agreement was made.  The written waiver provides in relevant part:

> The Republic hereby irrevocably waives and agrees not to plead
> any immunity from the jurisdiction of any such court [any federal or state
> court in New York City or any competent court in Argentina] to which it
> might otherwise be entitled in any action arising out of or based on the
> Securities or this Agreement by the holder of any Security.

(Fiscal Agency Agreement at 29-30, emphasis added.)

The underscored text limits the waiver in two significant respects:  (1) it is made only by

"the Republic" with respect to itself ("to which it might otherwise be entitled"), and (2) it applies

only to actions arising out of or based on the bonds.  By its clear text, therefore, the waiver does

not waive any rights of ENARSA.  Moreover, the waiver does not apply to claims that do not

"arise out of" or that are not "based on" the bonds.  The claims against ENARSA in this action

neither arise out of nor are based on the bonds, because ENARSA did not issue or default on the

bonds, and has no connection to the bonds whatsoever.  The claims are based on an entirely

different theory – namely, that ENARSA is the Republic's alter ego, not in relation to the bonds,

but in general.  *See* Epperson, 242 F.3d at 106 (alter ego claim raises "an independent

controversy with a new party in an effort to shift liability").  Accordingly, even if the Republic's

waiver could somehow be imputed to ENARSA, that waiver would not apply to this alter ego

action, because the waiver is expressly limited to actions arising out of or based on the bonds.

This limitation in the waiver must be given effect, not only because its meaning is plain

from the text, but also because sovereign waivers under the FSIA must be narrowly construed.

World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1162 (D.C. Cir. 2002)

("explicit waivers of sovereign immunity are narrowly construed 'in favor of the sovereign' and

are not enlarged 'beyond what the language requires'") (quoting Library of Congress v. Shaw,

478 U.S. 310, 318 (1986)); Gates v. Victor Fine Foods, 54 F.3d 1457, 1465-66 (9th Cir. 1995) (Canadian instrumentality's explicit waiver under a particular transaction did not constitute waiver with respect to other transactions).

NML's claims against ENARSA do not arise from and are not based on the bonds. Its claims are based solely on allegations that ENARSA is the Republic's alter ego, and concern the relationship between the Republic and ENARSA generally. This is clear from the very first paragraph of the complaint, in which NML explains that the action concerns questions "involving the relationship between ENARSA and Argentina" (Comp. ¶ 1). Thus, NML seeks to hold ENARSA liable, not in connection with the bonds, but "jointly and severally for all of Argentina's obligations" (Comp. ¶¶ 57, 60, 63, 65, 68, 70, 72, 75, 77, 79, 81) (emphasis added). The Republic's express waiver would not support jurisdiction over such a claim against the Republic itself; imputing the waiver to ENARSA, assuming the alter ego allegations were deemed sufficient, could not expand the jurisdictional reach of the waiver.

Accordingly, the Republic's waiver cannot support jurisdiction over NML's claims against ENARSA as a matter of law.

### C.   ENARSA Has Not Engaged in FSIA Commercial Activity

NML alleges that the Court "also has jurisdiction over this matter" under the FSIA's commercial activity exception, § 1605(a)(2) (Comp. ¶ 11). The allegation fails because it meets neither of § 1605(a)(2)'s requirements: (1) that the foreign state (in this case ENARSA) have engaged in commercial activity satisfying at least one of the three clauses in that subsection, and (2) that the action be "based upon" upon such activity. Transatlantic Shiffahrtskontor GMBH v. Shanghai Foreign Trade Corp., 204 F.3d 384, 388 (2d Cir. 2000).

To meet the initial requirement, a plaintiff must allege that the foreign state's activities fall within at least one of § 1605(a)(2)'s three clauses:  (1) "commercial activity carried on <u>in the United States</u>," or (2) "an act performed <u>in the United States</u> in connection with commercial activity of the foreign state elsewhere," or (3) commercial activity by the foreign state elsewhere which "causes a <u>direct effect in the United States</u>."  28 U.S.C. § 1605(a)(2) (emphasis added).  The complaint in this case does not identify which (if any) of the three clauses supposedly applies, and does not state what acts by ENARSA (or the Republic) supposedly constitute commercial activity on which NML's claims are based.  The complaint thus fails to meet the initial requirement.

In addition, NML does not allege that its claims in this action are "based on" any such commercial activity.  To meet this requirement, a plaintiff must show a close connection between the alleged commercial activity and "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case."  <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 357 (1993); *see also* <u>Transatlantic</u>, 204 F.3d at 390 (the degree of closeness required to meet the "based on" requirement is "considerably greater than common law causation requirements").  NML cannot meet (and does not even attempt to meet) this requirement because its claims against ENARSA are based, as stated in Point I.B above, solely on the alter ego theory.  The elements of an alter ego claim – *i.e.*, excessive control by a parent over its subsidiary, abuse of the corporate form (see discussion of *Bancec* in Point II.B below) – are not connected at all, let alone closely connected, to any commercial activity of ENARSA or the Republic identified in the complaint.  Rather, NML's alter ego allegations all concern the relationship between the Republic and ENARSA in Argentina, which has no direct effect in the United States (Comp. ¶¶ 26-50, discussed in Points II.C and II.D below).  *See* <u>Transatlantic</u>, 204 F.3d at 389-91 (action

to enforce Hong Kong judgments against instrumentality of Chinese state was not "based upon" any acts of the instrumentality that caused a "direct effect in the United States").

In sum, NML's jurisdictional allegation based on the commercial activity exception is unsupported by any factual allegations, fails to allege "commercial activity" as defined in § 1605(a)(2), and fails to allege that its claims are "based on" any such activity.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM THAT ENARSA IS THE ALTER EGO OF THE REPUBLIC OF ARGENTINA

### A.    Pleading Requirements Under *Iqbal* and *Twombly*

The sufficiency of NML's complaint is evaluated under Fed. R. Civ. P. 8(a) as interpreted by the Supreme Court in its recent decisions in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570) (emphasis added).

Plausibility in this context has a special meaning, which is critical in the present case.  It means more than "possible" or "consistent with."  Iqbal, 129 S. Ct. at 1949.  A complaint is not sufficient if it pleads facts that are "merely consistent with" both actionable and non-actionable conduct.  *Id.*  In Twombly, for example, plaintiffs alleged that defendants engaged in an illegal antitrust conspiracy.  The complaint alleged facts showing parallel conduct by the defendants, but did not allege facts showing that defendants had made an agreement to act in parallel. Noting that, under antitrust law, parallel action is consistent both with independent action (which is legal) and with an illegal conspiracy, the Supreme Court held that plaintiffs failed to meet the plausibility standard.  Twombly, 550 U.S. at 555-57.  As shown below (Point II.D), NML's non-conclusory allegations in this case concern activities that, under the *Bancec* standard, are not

actionable at all, but rather are consistent with customary and accepted dealings between a sovereign and its instrumentality that do not warrant treating them as alter egos.

The plausibility standard is applied after the court has discounted conclusory allegations, *i.e.*, allegations that consist of "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555, 557).

In applying these pleading standards, a court first determines the elements of the substantive claim that a plaintiff must plead. Iqbal, 129 S. Ct. at 1947-48 (reviewing first the elements of a *Bivens* action, just as the Court in Twombly began by reviewing the applicable antitrust principles). In this case, the applicable legal standard is the alter ego analysis of *Bancec* and its progeny (discussed in the following section). Next, the court identifies those allegations in the complaint "that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950 (*see* Point II.C below). Finally, the court considers the remaining allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951 (emphasis added) (*see* Point II.D below).

## B.     The Elements of an Alter Ego Claim under *Bancec*

In its 1983 decision in *Bancec*, the Supreme Court reaffirmed the principle that "duly created instrumentalities of a foreign state are to be accorded a presumption of independent status." 462 U.S. at 627. But the court held that "this presumption may be overcome in certain circumstances: (1) "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," and (2) when preserving an entity's separate status "would work fraud or injustice." *Id.* at 628-29.

Both circumstances described in *Bancec* as warranting the disregard of an instrumentality's separate status have been narrowly construed.  The Second Circuit has stated, "both *Bancec* and the FSIA legislative history caution against too easily overcoming the presumption of separateness."  Letelier, 748 F.2d at 795.[3]  *See also* Schneidemann v. Qatar Football Ass'n, No. 04- Civ. 3432 (LAP), 2004 WL 144846, at *5 (S.D.N.Y. 2008) ("veil-piercing is the rare exception, applied only in exceptional circumstances") (internal quotation marks and citation omitted).

Accordingly, courts have construed *Bancec*'s "extensive control" branch to require a showing that the government "exercises extensive control over the instrumentality's daily operations and abuses the corporate form."  LNC Invs. Inc. v. Republic of Nicaragua, 115 F. Supp. 2d 358, 363 (S.D.N.Y.) (emphasis added), *aff'd*, 228 F.3d 423 (2d Cir. 2000).  *See also* Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines, 965 F.2d 1375, 1382 (5th Cir. 1992) (courts pay "particularly close attention to whether the government is involved in [the instrumentality's] day-to-day operations").  As the Second Circuit noted, the decision in LNC "has been described by a commentator as 'consistent with the outcome in a series of prior appellate decisions that had shown a strong aversion to overriding the presumption of independent status for separate corporate agencies or instrumentalities.'" EM Ltd. v. Republic of Argentina, 473 F.3d 463, 478 (2nd Cir. 2007) (footnote and citations omitted) (quoting Paul L. Lee, "Central Banks and Sovereign Immunity," 41 Colum. J. Transnat'l L. 327, 364 (2003)).

---

[3]   The cited legislative history is a discussion of § 1610(b) – which concerns execution against assets of an instrumentality:  "If U.S. law did not respect the separate juridical identities of different agencies or instrumentalities, it might encourage foreign jurisdictions to disregard the juridical divisions between different U.S. corporations or between a U.S. corporation and its independent subsidiary."  H. R. Rep. No. 94-1487, pp. 29-30, *reprinted in* U.S. Code Cong. & Admin. News 1976, 6604, pp. 6628, 6629 (citation omitted) (quoted in *Bancec*, 462 U.S. at 627-28, and in Letelier, 748 F.2d at 793-94).

Consistent with this approach, the "fraud or injustice" branch of *Bancec* has also been narrowly construed.  Courts generally require a plaintiff to show that the entity sought to be held liable has participated in the wrongful conduct underlying the claim, for example, that the entity "was the vehicle through which the foreign state incurred the liability."  Bayer & Willis Inc. v. Republic of Gambia, 283 F. Supp. 2d 1, 6 (D.D.C. 2003) (citing Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc., 183 F.3d 1277, 1286-87 (11th Cir. 1999), and Hercaire Int'l, Inc. v. Argentina, 821 F.2d 559, 563 (11th Cir. 1987)).  *See also* Pravin Bankers Assocs., Ltd. v. Banco Popular del Peru, 9 F. Supp. 2d 300, 305 (S.D.N.Y. 1998) (there was no fraud or injustice where there was no evidence that Peru's instrumentality "was responsible for the underlying conduct giving rise to Peru's liability").  In this case, NML does not allege that ENARSA had any role in the issuance of or default under the bonds.

Failure of a sovereign state to pay a valid judgment does not constitute fraud or injustice under *Bancec*.  That circumstance "is present in every case in which a plaintiff seeks to hold an instrumentality responsible for the debts of its related government.  Allowing the *Bancec* presumption of separate juridical status to be so easily overcome would effectively render it a nullity."  Alejandre, 183 F.3d at 1286-87.  In fact, that circumstance is built into the FSIA, which imposes stricter requirements on enforcing judgments than on establishing jurisdiction to obtain such judgments.  As the Second Circuit has stated, in enacting the FSIA, "Congress did in fact create a right without a remedy."  Letelier, 748 F.2d at 798.  "[S]ince it was not Congress' purpose to lift execution immunity wholly and completely, a right without a remedy does exist."  *Id.* at 799.  Thus, the fact that NML has obtained valid judgments against the Republic provides no reason to ignore the plain language of the FSIA, given Congress's conscious design of the statute.

C.      **The Complaint's Conclusory Allegations Must Be Disregarded**

The complaint contains numerous and repetitive conclusory allegations, which, under

Iqbal and Twombly, must be disregarded (Point II.A above).  For example, in paragraph 4, NML

baldly alleges that ENARSA "is a mere extension of the Argentine Ministry of Planning" and "is

fully controlled and funded by the government with little operational autonomy."  In paragraph

5, it similarly alleges that "Argentina's dominance over ENARSA is wide-ranging, extending

throughout ENARSA's activities," and that "Argentina utterly dominates the business,

management and day-to-day operations of ENARSA."  These are classic examples of "formulaic

recitation[s]" and "naked assertion[s]" devoid of "further factual enhancement" that the Supreme

Court has held must be disregarded.  Similar conclusory allegations are contained in paragraphs

6, 9, 10, 11, 13, 26, 27, 33, 34, 35, 36, 37, 41, 42, 46, 48, 49, and 50 of the complaint (in a few

cases mixed with non-conclusory factual allegations, which are discussed in Point II.D below).

Each of the "Counts" in the complaint also contains conclusory allegations to the effect that

ENARSA is the Republic's alter ego (Comp. ¶¶ 54, 57, 60, 63, 65, 68, 70, 72, 75, 77, 79 and 81).

When the complaint's conclusory allegations are disregarded, few factual allegations

remain that need to be evaluated.  These are addressed in the following sections.

D.      **The Complaint's Remaining Allegations**
        **Fail to Allege a *Plausible* Alter Ego Claim**

1.      **Ownership and Overall Management**

NML devotes a good deal of space in the complaint to allegations that the Republic (1)

owns most of ENARSA's shares, and (2) appoints a controlling majority of its board of directors

(Comp. ¶¶ 27-33).  As these two features are present in what *Bancec* described as the "typical

government instrumentality," 462 U.S. at 624, they lend no support whatsoever to the claim that

ENARSA is the Republic's alter ego.  Transamerica Leasing, Inc. v. La Republica de Venezuela,

200 F.3d 843, 849 (D.C. Cir. 2000) ("If majority stock ownership and appointment of the

directors were sufficient, then the presumption of separateness announced in *Bancec* would be an

illusion."); Hester Int'l Corp. v. Federal Republic of Nigeria, 879 F.2d 170, 181 (5th Cir. 1989)

("The two factors of 100% ownership and appointment of the Board of Directors cannot by

themselves force a court to disregard the separateness of the juridical entities.").  This Court

reached the same conclusion in its 2009 order in Seijas v. Republic of Argentina, No. 04 Civ.

400 (TPG) (S.D.N.Y. Aug. 19, 2009) [Domb Decl. Ex. E], at 2-3 (denying application to turn

over property of Argentina's government-owned airline to enforce judgment on the bonds;

finding no alter ego relationship between the Republic and its airline company).[4]

### 2.    Financial Support

NML alleges that the Republic:  (a) provided most of ENARSA's initial capital

from inception (Comp. ¶ 43), (b) "provides billions of pesos in subsidies to ENARSA" (*id.* ¶ 44),

and (c) has provided "several generous concessions [*i.e.*, for exploration] to ENARSA for no

compensation" (*id.* ¶ 47).  These allegations refute rather than support NML's alter ego theory.

Subsidies and other financial support, like ownership and managerial control, are hallmarks of

the typical government instrumentality.  *Bancec*, 462 U.S. at 624 ("appropriations to provide

capital and cover losses" are "common features" of such entities).  As this Court stated in its

order in Seijas, "since the Republic has been pouring money into Aerolineas, this situation is the

---

[4]   Ownership and management control – like other features of the relationship between the Republic and ENARSA alleged by NML and discussed below – are also present in United States government owned entities, such as Amtrak.  The federal government owns all of Amtrak's issued and outstanding preferred stock (Domb Decl. Ex. F [Amtrak's 2009 annual report], p. 42, Note 1, and p. 47, Note 5).  The Rail Passenger Service Act, 49 U.S.C. § 24101 *et seq.*, which established Amtrak, provides that its nine directors consist of the Secretary of Transportation, the President of Amtrak, and seven others appointed by the President with the consent of the Senate. 49 U.S.C. § 24302(a)(1).

opposite of the typical alter ego relationship, where the sham entity is left underfunded by its principals" (Domb Decl. Ex. E, pp. 3-4).  *See also* <u>Transamerica</u>, 200 F.3d at 852 ("the infusion of state capital to cover [the instrumentality's] losses was a normal aspect of the relation between a government and a government-owned corporation, not an instance of "day-to-day" involvement in the affairs of the corporation").[5]

### 3.    Rate-Setting and Other Public Policy Direction

NML alleges that the Republic's supposed day-to-day control over ENARSA is shown in two ways.  First, the Republic directs ENARSA to purchase natural gas in the international market and re-sell it domestically at lower prices (Comp. ¶¶ 34, 36-37).  Second, the Republic has required ENARSA to enter into various energy projects:  (i) to buy gas and build a pipeline to transport the gas from Bolivia into Argentina (*id.* ¶ 38), (ii) to pursue a joint oil exploration project with Venezuela (*id.* ¶ 39), (iii) to provide gasoil to Argentina's state-owned electrical company at favorable prices (*id.* ¶ 40), and (iv) to purchase energy from plants using renewable sources (*id.*).[6]

Neither of these circumstances evidences an alter ego relationship.  In requiring ENARSA to keep the price of natural gas low domestically, the Republic is simply carrying out a regulatory policy to ensure that Argentine consumers can afford to heat their homes.  This was

---

[5]   Continuing with the Amtrak analogy, as reported in its 2009 annual report, Amtrak "has a history of recurring operating losses and is dependent on subsidies from the Federal Government to operate the national passenger rail system and maintain the underlying infrastructure. . . . Amtrak's ability to continue operating in its current form is dependent upon the continued receipt of subsidies from the Federal Government" (Domb Decl. Ex. F, p. 42, Note 2).

[6]   NML's allegation concerning a plan involving an individual's transportation of campaign contributions from Venezuela to Argentina has no relevance to the alter ego analysis; NML presumably includes it in the complaint purely for inflammatory effect.  *Cf.* <u>Letelier</u>, 748 F.2d at 794  (dismissing alter ego claims against Chile's government-owned airline).

one of the factors this Court cited in denying NML's application, at the outset of this case, for an

order seizing ENARSA's right to a shipment of natural gas en route to Argentina: "the natural

gas is intended to be used to provide gas for citizens of Argentina" (Domb Decl. Ex. C [Tr. of

Aug. 11, 2009], at 53).  The Republic's policy of making gas affordable to its citizens, through

its energy company, is not different, analytically, from its policy of making airline service

available, through its airline company.  If subsidizing such a policy in the airline sector "is the

opposite of the typical alter ego relationship," as this Court stated in Seijas, then the same is true

in the energy sector.

      Similarly, the fact that the Republic directs ENARSA to pursue various energy projects

does not evidence an alter ego relationship.  The projects are large, require substantial capital,

and reflect the Republic's broad public policy choices (*e.g.* building a pipeline from Bolivia,

jointly exploring for oil with Venezuela, promoting renewable sources of energy).  Such projects

are typical of those that foreign sovereigns pursue and often fund through their instrumentalities,

and that private parent companies entrust to and frequently fund through their subsidiaries.[7]  *See*

Hester, 879 F.2d at 176, 180 (entity created by the Nigerian government, whose stock was 100%

owned by the Nigerian government, whose loans for off-shore financing were all guaranteed by

the Nigerian government, and which allegedly represented the Federal Government of Nigeria in

"pursuing its agricultural policies" was not an alter ego of Nigeria; representation of Nigeria "is

facially not enough to establish an agency relationship.  All corporations to some degree

represent their owners."); *see also Bancec*, 462 U.S. at 626 ("Freely ignoring the separate status

---

[7]  Again, the analogy to Amtrak is apt.  For example, in 2009, the federal government authorized
$1.3 billion in grants to Amtrak, but directed that the funds be devoted to particular projects:
$450 million for security, and about $838 million for projects to repair, rehabilitate and upgrade
railroad assets; but no more than 60 percent of the non-security funds may be spent on projects
along the Northeast Corridor (Domb Decl. Ex. F, p. 42, Note 2; Pub. L. 111-5, 123 Stat. 209
(Feb. 17, 2009)).

of government instrumentalities would result in substantial uncertainty over whether an instrumentality's assets would be diverted to satisfy a claim against the sovereign. . . . As a result, the efforts of sovereign nations to structure their governmental activities in a manner deemed necessary to promote economic development and efficient administration would surely be frustrated.").

In fact, as *Bancec* recognized, the "typical government instrumentality" is formed for the very purpose of performing government tasks "in a manner consistent with the enabling law" of the instrumentality.  462 U.S. 611 at 64.  That an instrumentality such as ENARSA thus acts in accordance with national policies says nothing at all about alter ego – indeed, organs of national governments, which are by definition entities created "for a national purpose" and which are "actively supervise[d] and regulated by the government," are also agencies or instrumentalities under FSIA § 1603(b) and presumptively entitled to sovereign immunity, provided they are separate legal persons.  *See* Filler v. Hanvit Bank, 378 F.3d 213, 217 (2d Cir. 2004) ("special legal entity" created to insure bank deposits was "a separate legal person" that performed "functions traditionally performed by the government" and was a presumptively immune "agency or instrumentality"); *see also* Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd., 476 F.3d 140, 143 (2d Cir. 2007) (per curiam) (entity created "for the national purpose of examining, supervising, and investigating Korean financial institutions" was an agency or instrumentality and immune under the FSIA).[8]

---

[8]  This Court also has recognized that an instrumentality's compliance with national policy directives does not render it an alter ego of the foreign state.  EM Ltd. v. Republic of Argentina, No. 08 Civ. 7974 (TPG), 2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009) (dismissing alter ego claims against the Republic's wholly-owned bank, Banco de la Nación Argentina).  Similarly in this case, the allegation that the Republic directs ENARSA to engage in certain projects as part of a national energy policy is insufficient to establish an alter ego relationship between them.

### 4.   The Complaint's Allegations of "Fraud and Injustice" under *Bancec* Are Purely Conclusory

The complaint contains two short paragraphs under the heading "Recognizing ENARSA As Separate From Argentina Would Work Fraud And Injustice" (Comp. ¶¶ 49-50). Both consist of purely conclusory allegations, bereft of any facts or explanation; they allege that the Republic has manipulated ENARSA "to avoid paying its judgment creditors" (Comp. ¶ 49) and "to avoid paying the legitimate claims and judgments of creditors like NML" (*id.* ¶ 50), and that it "uses ENARSA as its alter ego" (*id.* ¶ 49).

These allegations fail to state a claim under Iqbal and Twombly (*see* Section II.A above). They are also wrong on the law. As stated above, a foreign state's failure or refusal to pay a judgment does not amount to "fraud or injustice" under *Bancec* (Point II.B above). Not surprisingly, the complaint does not allege any facts to show any fraud or injustice.

More significant is what the complaint does not allege. It does not allege that the Republic takes funds from ENARSA (it alleges the opposite), that ENARSA had any role concerning the Republic's underlying liability (the bonds) (as Braspetro did in U.S. Fidelity), that the Republic is using ENARSA to pursue a claim in the United States while trying to avoid a set-off for its own liabilities (as Cuba sought to do in *Bancec*), or that any court has deemed ENARSA to be the Republic's alter ego (as the courts of three countries had held in Kensington).

In sum, the complaint's non-conclusory allegations concerning the relationship between the Republic and ENARSA "do not add up to anything that resembles the abuses in the decisions cited in *Bancec*." Letelier, 748 F.2d at 794.

**Conclusion**

For the foregoing reasons, the Court should grant the motion and dismiss all claims alleged against ENARSA in this action.

Dated: August 6, 2010

AKERMAN SENTERFITT LLP


*s/ Martin Domb*

By: _____

Carlos Mendez-Peñate
Martin Domb

335 Madison Avenue, 26th Floor
New York, New York 10017
Tel. (212) 880-3800
Fax (212) 880-8965

*Attorneys for Defendant Energía Argentina S.A.*