UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
NML CAPITAL, LTD.,

                      Plaintiff,                          09 Civ. 7013 (TPG)

   - against -

ENERGÍA ARGENTINA S.A. and
THE REPUBLIC OF ARGENTINA,

                      Defendants.
---------------------------------------------------------------x

# ENARSA'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

AKERMAN SENTERFITT LLP
Carlos Mendez-Peñate
Martin Domb
335 Madison Avenue, 26th Floor
New York, New York 10017
Tel. (212) 880-3800
Fax (212) 880-8965

*Attorneys for Defendant Energía Argentina S.A.*

Dated: October 7, 2010

{NY118438;1}

**Table of Contents**

**Page**

Table of Authorities ................................................................................................................... ii

I. Jurisdiction .........................................................................................................................1

    A. NML Concedes that It Must Plead an Independent Basis for Jurisdiction as to ENARSA ....................................................................1

    B. The Republic's Waiver Applies Only to Claims Under the Bonds, and Does Not Apply to Alter Ego Claims .............................................2

    C. NML Has Abandoned Its Allegation of Jurisdiction Based on FSIA Commercial Activity ......................................................................3

II. Alter Ego ............................................................................................................................4

    A. Ownership, Board Control, Financial Support, and Policy Direction – Whether Singly or in Combination – Are Insufficient to Establish an Alter Ego Relationship ..............................................................................4

    B. Price Controls Do Not Constitute Day-to-Day Control ...........................................6

    C. The Remaining Allegations Are Conclusory and Entitled to No Weight Under *Twombly* and *Iqbal* ....................................................7

    D. A Sovereign's Non-Payment of a Valid Judgment Does Not Constitute "Fraud and Injustice" under *Bancec* ......................................9

Conclusion ..................................................................................................................................10

# Table of Authorities

**Page**

**Cases**

Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.,
  183 F.3d 1277 (11th Cir. 1999) .................................................................................9

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)................................................................... 7-8

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).................................................. 7-8

Butler v. Sukhoi Co., 579 F.3d 1307 (11th Cir. 2009) ....................................................1

Consolidated Edison Co. of New York, Inc. v. Bodman, 449 F.3d 1254 (D.C. Cir. 2006) ............7

Edaleen Dairy, LLC v. Johanns, 467 F.3d 778 (D.C. Cir. 2006)......................................................7

EM Ltd. v. Republic of Argentina, No. 03 Civ. 2507 (TPG), 2010 WL 1404119
  (S.D.N.Y. Apr. 7, 2010), *appeal docketed*, No. 10-1487-CV (2d Cir. Apr. 21, 2010).................9

Epperson v. Entertainment Express, Inc., 242 F.3d 100 (2d Cir. 2001) ......................................1, 3

First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba,
  462 U.S. 611 (1983) ("*Bancec*")................................................................................................9

Gates v. Victor Fine Foods, 54 F.3d 1457 (9th Cir. 1995) ..............................................................2

Hester Int'l Corp. v. Federal Republic of Nigeria, 879 F.2d 170 (5th Cir. 1989) .......................4, 5

Knox v. Orascom Telecom Holding S.A.E., 477 F. Supp. 2d 642 (S.D.N.Y. 2007).......................1

Letelier v. Republic of Chile, 748 F.2d 790 (2d Cir. 1984),
  *cert. denied*, 471 U.S. 1125 (1985)..........................................................................................8, 9

Library of Congress v. Shaw, 478 U.S. 310 (1986).........................................................................2

Peacock v. Thomas, 516 U.S. 349 (1996).......................................................................................1

Seijas v. Republic of Argentina, No. 04 Civ. 400 (TPG) (S.D.N.Y. Aug. 19, 2009)
  [Domb Decl. Ex. E] ................................................................................................4, 5, 10

Transamerica Leasing, Inc. v. La Republica de Venezuela,
  200 F.3d 843 (D.C. Cir. 2000) ...............................................................................................4, 5

World Wide Minerals, Ltd. v. Republic of Kazakhstan,
  296 F.3d 1154 (D.C. Cir. 2002) ...................................................................................................2

**Page**

**Statutes, Rules and Other Authorities**

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "FSIA"):

    § 1605(a)(2) ............................................................................................................3, 4

Defendant Energía Argentina S.A. ("ENARSA") submits this reply memorandum in further support of its motion to dismiss.

## I. Jurisdiction

NML does not even address, and thereby concedes, the three main jurisdictional points in ENARSA's initial memorandum ("ENARSA Memo"): (1) that NML must plead an *independent* basis for jurisdiction over ENARSA, (2) that the Republic's waiver is limited to claims *under the bonds*, and therefore cannot apply to NML's alter ego claims, and (3) that there is no basis for jurisdiction based on FSIA commercial activity (ENARSA Memo at 5-11).  NML simply argues – in a single page, lacking any analysis – that if a plaintiff succeeds in pleading an alter ego claim, then jurisdiction automatically exists over the alter ego (Opp. Memo at 11-12).  NML cites no authorities in support of that proposition and, as shown below, it is legally incorrect.

### A. NML Concedes that It Must Plead an Independent Basis for Jurisdiction as to ENARSA

In its opposition, NML completely ignores the point in ENARSA's initial memorandum that a plaintiff alleging an alter ego claim in order to enforce a judgment against a person not already liable on the judgment may not rely on the court's jurisdiction over the judgment debtor, but must assert an independent basis for jurisdiction over the new defendant (ENARSA Memo at 5-7).  NML does not cite – and thus fails to rebut – any of the cases that ENARSA cited in support of that proposition: Epperson v. Entertainment Express, Inc., 242 F.3d 100 (2d Cir. 2001), Peacock v. Thomas, 516 U.S. 349 (1996), Knox v. Orascom Telecom Holding S.A.E., 477 F. Supp. 2d 642 (S.D.N.Y. 2007), and Butler v. Sukhoi Co., 579 F.3d 1307 (11th Cir. 2009).

NML therefore concedes this point, which is fatal to its theory that a well-pleaded alter ego claim plus jurisdiction over the judgment debtor is all that is needed to establish jurisdiction

over the alleged alter ego.  In each of the above-cited cases, the court held that these two elements were not enough; a plaintiff must plead an *independent* basis for jurisdiction over the alleged alter ego.  NML has failed to rebut this well-established principle and has failed to plead an independent basis for jurisdiction over ENARSA.

> **B.      The Republic's Waiver Applies Only to Claims Under the Bonds, and Does Not Apply to Alter Ego Claims**

NML cannot overcome the <u>actual words</u> of the written waiver, which unequivocally subjects <u>the Republic</u> to the Court's jurisdiction <u>only</u> with respect to claims "arising out of or based on" the bonds or the bond agreement (ENARSA Memo at 8 [quoting the waiver in full]).

In its opposition, NML does not dispute, or even cite, the cases cited by ENARSA holding that sovereign waivers must be narrowly construed (ENARSA Memo at 8-9) (citing <u>World Wide Minerals, Ltd. v. Republic of Kazakhstan</u>, 296 F.3d 1154, 1162 (D.C. Cir. 2002), <u>Library of Congress v. Shaw</u>, 478 U.S. 310, 318 (1986), and <u>Gates v. Victor Fine Foods</u>, 54 F.3d 1457, 1465-66 (9th Cir. 1995)).  Instead, NML tries, unsuccessfully, to equate its alter ego claim to one based on the bonds.  It asserts that ENARSA "mischaracterizes the Complaint" in stating that NML seeks to hold ENARSA liable "for <u>all</u> of Argentina's obligations" (Opp. Memo at 11) and claims that NML seeks judgments against ENARSA only based on the bonds (*id.*).  Yet, ENARSA's supposed mischaracterization of the complaint is a direct quote from 11 paragraphs in the complaint, each of which states in full:

> <u>As the alter ego of Argentina, ENARSA is jointly and severally liable for all of Argentina's obligations</u>.  Accordingly, NML is entitled to judgment expressly adjudging ENARSA jointly and severally liable for its judgment against Argentina in *NML I* [through *NML XI*, respectively].

(Comp. ¶¶ 57, 60, 63, 65, 68, 70, 72, 75, 77, 79, 81, underscoring added.)  Paragraph 1 of the complaint is substantively the same.  In the first sentence, NML alleges that it seeks a declaratory

judgment to determine questions "involving <u>the relationship between ENARSA and Argentina</u>" (emphasis added) – *i.e.*, whether ENARSA is the Republic's alter ego. In the second sentence, NML alleges that it seeks to hold ENARSA, "<u>as Argentina's alter ego</u>" (emphasis added), liable on NML's existing and anticipated judgments against the Republic based on the bonds. Thus, as NML itself repeatedly and clearly alleges, <u>only a finding that ENARSA is the Republic's alter ego</u> would establish any liability on the part of ENARSA in relation to the bonds.

Critically, the elements of an alter ego claim are fundamentally different from those of a claim to collect on defaulted bonds. Again, NML fails to rebut or even address binding precedent, cited by ENARSA, which so holds (ENARSA Memo at 8, citing <u>Epperson</u>, 242 F.3d at 106 (alter ego claim raises "an independent controversy with a new party in an effort to shift liability")). The core elements of a claim on a bond are issuance and terms of the bond, plaintiff's status as bondholder, and whether there has been a default in payment. NML does not allege these elements in this action. An alter ego claim, on the other hand, focuses on the relationship between the alleged alter egos. These are the elements that NML tries to allege in this action – in NML's own words, its claims "involv[e] the relationship between ENARSA and Argentina" (Comp. ¶ 1).

Thus, NML's alter ego claim against ENARSA is <u>not</u> one "arising out of or based on" the bonds. Accordingly, regardless of whether NML has adequately pled an alter ego claim, the Republic's waiver does not apply to that claim, and the Court lacks jurisdiction over ENARSA.

  **C. NML Has Abandoned Its Allegation of Jurisdiction Based on FSIA Commercial Activity**

NML alleged in its complaint that the Court "also" has jurisdiction over ENARSA under the FSIA's commercial activity exception, § 1605(a)(2). ENARSA demonstrated in its initial memorandum that the required elements of § 1605(a)(2) are not present in this case (ENARSA

Memo at 9-11).[1]  In its opposition, NML does not address this point at all.  It has therefore abandoned its claim of jurisdiction on this basis.

## II.   Alter Ego

### A.   Ownership, Board Control, Financial Support, and Policy Direction – Whether Singly or in Combination – Are Insufficient to Establish an Alter Ego Relationship

In its initial memorandum, ENARSA showed that each of these elements – ownership, control of the board of directors, financial support, and policy direction – is insufficient to establish an alter ego relationship (ENARSA Memo at 15-20).  In its opposition, NML acknowledges that none of these factors alone is sufficient.  It claims, however, that if NML's allegations "are read together" instead of "in isolation," a "portrait of government control . . . emerges" (Opp. at 2).

In the case involving the Republic's airline, Aerolineas Argentinas, this Court concluded that these factors in combination do not establish an alter ego relationship.  Seijas v. Republic of Argentina, No. 04 Civ. 400 (TPG) (S.D.N.Y. Aug. 19, 2009).  The plaintiffs in that case alleged "that Aerolineas is the alter ego of the Republic because it owns almost 100% of the airline's stock, has invested hundreds of millions of dollars in the airline, and is actively overseeing Aerolineas operations."  Id. at 3.  The Court stated:  "These elements [plural] do not suffice to establish an alter ego relationship."  Id.  See also Transamerica Leasing, Inc. v. La Republica de Venezuela, 200 F.3d 843, 849-53 (D.C. Cir. 2000); Hester Int'l Corp. v. Federal Republic of Nigeria, 879 F.2d 170, 181 (5th Cir. 1989) (cited in ENARSA Memo at 16 and 17).

---

[1]  To satisfy these required elements, NML would have had to allege that (1) ENARSA has engaged in commercial activity as defined in § 1605(a)(2), and (2) the action is "based upon" such activity.

NML claims that <u>Transamerica</u> and <u>Hester</u> hold that government ownership and authority to appoint directors "are relevant to an alter ego analysis" even if they are not "dispositive" (Opp. Memo at 5).  However, the courts in both those cases entirely discounted the significance of these two factors (as this Court did in <u>Seijas</u>).  <u>Transamerica</u>, 200 F.3d at 849 ("If majority stock ownership and appointment of the directors were sufficient, then the presumption of separateness announced in *Bancec* would be an illusion."); <u>Hester</u>, 879 F.2d at 181 ("The two factors of 100% ownership and appointment of the Board of Directors cannot by themselves force a court to disregard the separateness of the juridical entities.").

In fact, plaintiffs in <u>Transamerica</u> had alleged, and the lower court had found, several additional elements, beyond ownership and control, bearing on the relationship between Venezuela and its shipping company ("CAVN"); the court found that Venezuela:

> (1) owned a majority of CAVN's stock; (2) appointed the Board of Directors and the Chairman of the Board and President; (3) was involved in CAVN's "day-to-day" operations by overseeing the restructuring of CAVN's intermodal operations and approving the sale of three of CAVN's vessels; and (4) aided CAVN financially by allowing the FIV [another Venezuelan agency] to enter into a trust agreement with CAVN; while (5) the President of CAVN, with apparent authority to bind Venezuela, assured one of the plaintiffs that the Government would support CAVN.

200 F.3d at 850-51.  The court held that these findings, "considered as a whole," were insufficient to state a viable alter ego claim.  *Id.*  <u>Transamerica</u> illustrates that, in directing ENARSA to pursue major development projects with other countries as part of a national energy policy, the Republic does not thereby transform ENARSA into its alter ego.  Thus, NML's allegations that the Republic owns most of ENARSA's stock, appoints most of its directors, financially supports it, and directs it to pursue major energy projects do not, singly or as a whole, state a viable alter ego claim.

### B. Price Controls Do Not Constitute Day-to-Day Control

The only evidence that NML has submitted and cites to support its allegations that the Republic exercises day-to-day control over ENARSA are (1) "Natural Gas Decree 2067/2008" (the "Decree") and (2) "Energy Provision 287/2008" approving the "General Regulation of the 2009 Total Energy Program" (the "Regulation") (Kang Decl. [Docket Entry 21] Ex's 6 and 7, respectively) (cited in Opp. Memo at 3).

Neither document supports NML's allegations of day-to-day control. The Decree recites that a framework is needed to prevent "possible gas shortfalls" and "guarantee[] the internal supply of natural gas" ("Whereas" clauses on second page). It directs the creation of a trust fund, to be administered by the Ministry of Federal Planning, to ensure that enough natural gas can be imported "to meet the country's needs for that hydrocarbon" (Decree, Art. 1, *see also* Art. 3.) The sections of the Regulation that NML cites (Opp. Memo at 3, Comp. ¶ 36) merely state that:

- ENARSA [the "Operative Technical Management Unit"] must design and implement a system to supply LNG to the Argentine market, is responsible for purchasing the LNG, and may contract for goods and services in performing this function. (Regulation ¶¶ 1.1.2.3 and 1.1.3.a.)

- ENARSA must determine the purchase price of the LNG according to international markets. (Regulation ¶ 1.1.3.c.)

- A unit within the Ministry of Federal Planning [the "Executing Unit"], together with the Ministry of Domestic Trade, will set the LNG sale prices for the domestic market. (Regulation ¶ 1.1.3.d.)

Thus, the Decree and Regulation on which NML relies (a) assign to ENARSA the task of designing and implementing a system to ensure an adequate supply of LNG for the Argentine domestic market, and (b) assign to the Ministry of Federal Planning the responsibility for setting the domestic prices of LNG.

Setting price controls in furtherance of a national policy to ensure an adequate supply of an essential commodity, such as natural gas, does not amount to day-to-day control over agencies (or private companies) that must implement such controls.  The United States (like Argentina and many other countries) frequently has resorted to price controls to ensure that consumers have access to essential commodities at affordable prices.  *See*, *e.g.*, Consolidated Edison Co. of New York, Inc. v. Bodman, 449 F.3d 1254, 1255 (D.C. Cir. 2006) ("the DOE imposed price controls on crude oil sold in the United States between 1973 and 1981"); Edaleen Dairy, LLC v. Johanns, 467 F.3d 778, 779 (D.C. Cir. 2006) ("Milk markets in the United States are governed by a complex system of price controls that dates back to the Depression era.").[2]  This Court recognized the importance of the Republic's policy to ensure an adequate supply of LNG for its citizens, when the Court denied NML's application, at the outset of this case, to seize a shipment of LNG *en route* to Argentina.

NML cites no authority for the proposition that a sovereign's setting of price controls renders the affected agencies or companies alter egos of the sovereign state.  Thus, the fact that the Republic has set the prices at which ENARSA may sell LNG domestically in no way shows that ENARSA is the Republic's alter ego.

### C. The Remaining Allegations Are Conclusory and Entitled to No Weight Under *Twombly* and *Iqbal*

NML does not discuss or cite Twombly or Iqbal, and thus concedes that ENARSA has correctly stated the framework that the Supreme Court established in those cases for determining whether a plaintiff has alleged a plausible claim (ENARSA Memo at 11-12, discussing Bell

---

[2]   *See also* Reply Declaration of Martin Domb filed herewith ("Domb Reply Decl.") Ex. H (summarizing the history of gas regulation in the United States); *id.* at 3 (between 1974 and 1978, a federal agency "set a national price ceiling of $0.42 per million cubic feet (mcf) of natural gas").

Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)). NML's allegations concerning ownership, board control, financial support, national policy directives, and price controls, as discussed in Points II.A and B above, do not state a plausible alter ego claim. All of NML's remaining allegations to the effect that the Republic controls ENARSA's day-to-day operations are conclusory and entitled to no weight.

NML is not helped by its reliance on the so-called "Suitcase Scandal." In its complaint, NML cited (and mischaracterized) this incident in a single paragraph (Comp. ¶ 41). In its motion, ENARSA addressed it in a footnote (ENARSA Memo at 17 n.6). The incident involved wrongdoing by an individual and has no relevance to the alter ago analysis.

First, the allegation concerning this one-off incident involving at most $800,000 says nothing about the day-to-day control necessary to establish alter ego. Rather than raise an inference of improper conduct by the Republic, the allegation does the opposite, since the suitcase was carried by an individual not affiliated with ENARSA or the Republic, and was discovered by an Argentine customs official (Domb Reply Decl. Ex's I, at 2, and J). Moreover, as conceded in the Complaint, ENARSA was pursuing projects with PDVSA (Comp. ¶ 39); there is nothing unusual about officials of the two agencies traveling together.

Second, NML's claim that this incident is proof of an alter ego relationship between ENARSA and the Republic is foreclosed by Letelier v. Republic of Chile, 748 F.2d 790 (2d Cir. 1984), *cert. denied*, 471 U.S. 1125 (1985). In Letelier, the Second Circuit held that the assets of the Chilean national airline, LAN Chile, were not available to satisfy the debts of the Chilean government, even though – unlike the allegations here – property of the airline was used to carry out assassinations that formed the basis of the claims against the Chilean government. *Id.* at 794. The Second Circuit concluded that the facts showed only that one individual was able to enlist

the cooperation of LAN officials in carrying out the assassinations, *not* that "LAN's separate status was established to shield its owners from liability for their torts or that Chile ignored ordinary corporate formalities." *Id*.  Here, likewise, NML does not – because it cannot – plead any facts showing that ENARSA was established to shield the Republic from liability, or that the Republic ignores ENARSA's corporate form.

### D. A Sovereign's Non-Payment of a Valid Judgment Does Not Constitute "Fraud and Injustice" Under *Bancec*

Finally, NML persists in arguing that the Republic's non-payment of the judgments constitutes fraud and injustice under *Bancec* (Opp. Memo at 9-10) despite binding authority to the contrary.  Letelier, 748 F.2d at 798 (in enacting the FSIA, Congress deliberately made it more difficult to execute on a judgment than to obtain a judgment against a foreign state; "Congress did in fact create a right without a remedy").  *See also* Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc., 183 F.3d 1277, 1286-87 (11th Cir. 1999) (failure to pay a judgment is not fraud or injustice under *Bancec*, as that fact "is present in every case in which a plaintiff seeks to hold an instrumentality responsible for the debts of its related government"); ENARSA Memo at 14.  In its opposition, NML did not cite or rebut these cases or the points for which ENARSA cited them.

NML also incorrectly (and irresponsibly) asserts that this Court has held that "Argentina routinely disregards the corporate forms of its instrumentalities" (Opp. Memo at 10).  NML provides no citation for that statement, and no such statement appears in any other decision to which NML cites.  Although the Court has upheld alter ego claims with respect to certain of the Republic's instrumentalities (*e.g.*, BCRA, in EM Ltd. v. Republic of Argentina, No. 03 Civ. 2507 (TPG), 2010 WL 1404119 (S.D.N.Y. Apr. 7, 2010), *appeal docketed*, No. 10-1487-CV (2d

Cir. Apr. 21, 2010)), it has held otherwise with respect to others (*e.g.*, Aerolineas, in <u>Seijas</u>).

There is no evidence of abuse with respect to ENARSA.

## Conclusion

For the foregoing reasons and those set forth in its initial motion papers, the Court should grant ENARSA's motion and dismiss all claims alleged against it in this action.

Dated: October 7, 2010

                        AKERMAN SENTERFITT LLP

                        *s/ Martin Domb*

By: _____

                        Carlos Mendez-Peñate
                        Martin Domb

                        335 Madison Avenue, 26th Floor
                        New York, New York 10017
                        Tel. (212) 880-3800
                        Fax (212) 880-8965

                        *Attorneys for Defendant Energía Argentina S.A.*